[No. A056632. First Dist., Div. One. Feb. 23, 1993.]

ANMACO, INC., et al., Plaintiffs and Appellants.
WILLIAM T. BOHLKEN, Defendant and Respondent.

**COUNSEL**

Montie S. Day for Plaintiffs and Appellants.

Sucherman & Collins, Lowell H. Sucherman and Bernard N. Wolf for Defendant and Respondent.

## OPINION

DOSSEE, J.—Anmaco, Inc., a California corporation, and Mark J. Pearlman appeal from a judgment dismissing their action against William T. Bohlken and from a subsequent award of attorney fees. We affirm the judgment and order.

### PROCEDURAL AND FACTUAL BACKGROUND

Pearlman and Bohlken are the sole directors of Anmaco and each owns 50 percent of that corporation's shares. On November 23, 1987, Pearlman filed an unverified complaint against Bohlken, with Pearlman and Anmaco named as plaintiffs. The first through the ninth causes of action alleged various wrongs committed by Bohlken against the corporation.[1] The tenth cause of action requested appointment of a receiver. The eleventh cause of action was for an accounting. The twelfth cause of action concerned breach of the fiduciary duty allegedly owed by a 50 percent shareholder to the other 50 percent shareholder. The thirteenth cause of action was for breach of a shareholders' agreement as it applied to the interest of Pearlman. The fourteenth, and final, cause of action requested removal of Bohlken as a director or appointment of a provisional director. The prayer sought over $1 million in damages, injunctive relief, and other relief on behalf of the corporation and Pearlman.

On or about October 25, 1990, Bohlken filed a motion for judgment on the pleadings, directed at the twelfth, thirteenth and fourteenth causes of action, arguing that a 50 percent shareholder owes no fiduciary duty to another 50 percent shareholder. The motion was also based on the argument that Pearlman had not alleged any individual harm ·(apart from harm to the corporation), that the conduct complained of was not within the scope of the shareholders' agreement, and that the corporation must be named as a defendant, not as a plaintiff, in an action to remove a director.

On December 7, 1990, the court denied the motion for judgment on the pleadings as to the fourteenth cause of action (provisional director) and

---

[1] The first nine causes of action include the following transgressions: breach of the fiduciary duty of a director to the corporation by appropriating corporate assets, opportunities, and trade secrets; constructive trust on corporate benefits; conversion of corporate property; fraud on the corporation; interference with contractual and business relations; unfair competition; injunction; and breach of a shareholders' agreement meant to protect the corporation.

granted it as to the twelfth (fiduciary duty) and thirteenth (shareholders' agreement) causes of action, allowing 10 days "to amend the twelfth and thirteenth causes of action."

Despite the clear wording of the court's order allowing amendment only as to two causes of action, Pearlman filed a first amended complaint which, in addition to amending the twelfth and thirteenth causes of action, amended the fourteenth cause of action, added numerous new allegations to the complaint itself, and added a new fifteenth cause of action for breach of the covenants of good faith and fair dealing. Bohlken's motion to strike the first amended complaint was granted. The court directed Pearlman to amend the complaint solely in accordance with the terms of the previous order.

On December 28, 1990, Pearlman filed a second amended complaint which deleted the fifteenth cause of action and amended the twelfth and thirteenth causes of action to allege that the shareholders' agreement created a fiduciary duty between the two shareholders and that misappropriating the corporate assets made performance of the agreement impossible.

On or about January 23, 1991, Bohlken filed a motion for summary judgment on the first 11 causes of action, arguing that Pearlman, as President and a 50 percent shareholder, had no authority to bring an action on behalf of the corporation. On May 17, 1991, the court granted the motion as to all 11 causes of action.

On or about June 18, 1991, Bohlken filed a motion for judgment on the pleadings as to the remaining causes of action, repeating the arguments made in the October 25, 1990 motion for judgment on the pleadings. On July 1, the court denied the motion as to the twelfth cause of action (breach of fiduciary duty) and granted it as to the thirteenth (breach of shareholders' agreement) and fourteenth (removal of director) causes of action, with 20 days' leave to amend.

Once again, rather than amend the two causes of action, Pearlman filed a third amended complaint, which in addition to amending the thirteenth and fourteenth causes of action, purported to add the corporation as a defendant. New allegations were added to the body of the complaint regarding how Anmaco had originally been named as a plaintiff, and stated that it was not being accused of wrongdoing. Bohlken again moved to strike, and the motion was granted with 10 days' leave to amend in accordance with the prior ruling.

Pearlman failed to amend and Bohlken filed an ex parte motion to enter a judgment of dismissal. In the motion, Bohlken erroneously informed the

court that the July 1 judgment on the pleadings had been granted as to the twelfth, as well as the thirteenth and fourteenth causes of action. Judgment of dismissal was filed on December 9, 1991. Notice of entry of the judgment was served on Pearlman.

On December 19, 1991, Bohlken filed a motion to fix the amount of attorney fees pursuant to Civil Code section 1717. Pearlman opposed the motion for attorney fees and argued that the twelfth cause of action was still viable despite his failure to amend after the third amended complaint was stricken.

The court ruled that the dismissal was valid and entered an order awarding respondent attorney fees and costs. Pearlman and Anmaco appealed from the judgment of dismissal and the order following judgment.

## DISCUSSION

On appeal, Pearlman argues that the trial court erred in granting the January 23, 1991 summary judgment motion on the first 11 causes of action. He claims that a corporation's president has the authority to institute action on behalf of the corporation. He also challenges the grant of judgment on the pleadings as to the thirteenth and fourteenth causes of action and the dismissal and award of attorney fees. We discuss these contentions in order.

*Summary Judgment*

█ The May 17, 1991, order granting summary judgment may be reviewed in this appeal. No judgment was entered in 1991, so review was not previously available. (*Integral Land Corp.* v. *Anderson* (1944) 62 Cal.App.2d 770, 771 [145 P.2d 364]; Code Civ. Proc., § 437c, subds. (j), (*l*).)

Furthermore, if a judgment had been entered in 1991, it would have been unwarranted. The fourteenth cause of action requesting removal of a director was an undetermined issue which affected the corporation and required retention of the corporation as a party. (Corp. Code, § 304.) A separate judgment is not proper where it fails to dispose of all issues to be determined as to one party. (*DeGrandchamp* v. *Texaco, Inc.* (1979) 100 Cal.App.3d 424, 431 [160 Cal.Rptr. 899]; Code Civ. Proc., § 437c, subd. (j).)

The 1991 order was not a separate judgment and a separate judgment would have been improper if it had been entered. Consequently, review of the order granting summary judgment on the first 11 causes of action is available on this appeal. (*Etienne* v. *DKM Enterprises, Inc.* (1982) 136

Cal.App.3d 487, 489 [186 Cal.Rptr. 321] [summary judgment as to part of complaint reviewable immediately where no issue remains as to one party, otherwise reviewed on appeal from final judgment].)

■ Bohlken's summary judgment motion, directed against the first 11 causes of action, was based on the argument that a director and 50 percent shareholder has no authority to bring an action on behalf of the corporation against the other director and 50 percent shareholder. Bohlken relied on the New York case of *Tidy-House Paper Corp. of N.Y.* v. *Adlman* (1957) 4 A.D.2d 619 [168 N.Y.S.2d 448], which held that there was no presumed or implied authority on the part of a corporation's president to institute an action in the name of the corporation. That case was an action by the corporate president (also a 50 percent shareholder) to recover funds withdrawn from the corporate bank account by the other 50 percent shareholder. The court noted that the correct vehicle for such a suit is a shareholders' derivative action. (*Id.*, 168 N.Y.S.2d at pp. 451-452.)

Appellant argues at length that by virtue of the corporate bylaws, he, as president of Anmaco has "general supervision, direction and control of the business and officers of the corporation." Appellant finds in this sentence the express authority to institute legal actions on behalf of the corporation when the other 50 percent owner of the shares does not consent. The bylaws also provide that the president's exercise of his office is "subject to the control of the Board of Directors . . . ." The bylaws further state: "The business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of its Board of Directors." The president does not have the power to enter into contracts or execute other instruments or render the corporation "liable for any purposes or any amount" without board authorization. We think it clear, from the restrictions on the power of the corporate officers, that there is no power to institute litigation in the corporate name against the other 50 percent shareholder.

In general, the issue of the president's power in the face of a corporate deadlock is unsettled, and has not been the subject of a great deal of case law. (See, e.g., Annot. (1949) 10 A.L.R.2d 701.) Our Supreme Court has not found occasion to reach this issue. (*Holt* v. *College of Osteopathic Physicians & Surgeons* (1964) 61 Cal.2d 750, 755-756, fn. 4 [40 Cal.Rptr. 244, 394 P.2d 932].) "There is a conflict in the decisions as to the right of the president of a corporation, in the event of a deadlock or division of the directors, to initiate litigation in the corporation's name." (2A Fletcher, Cyclopedia of the Law of Private Corporations (1992 rev.) § 618.10, p. 192.) Regarding the general power of the president to act when the directors are deadlocked, a commentator has stated that out-of-state cases are inconsistent in their

results, but "it is clear that the scope of such permissible action is extremely limited and clearly does not exist with respect to any major corporate decision." (3 Marsh, Cal. Corporation Law (3d ed. 1992 supp.) § 22.21, p. 1878.)

In *Sealand Inv. Corp.* v. *Emprise, Inc.* (1961) 190 Cal.App.2d 305 [12 Cal.Rptr. 153], the Sealand Corporation filed a complaint for diversion of corporate assets, breach of fiduciary duty, misappropriation of corporate opportunities, and to impose a constructive trust. The defendants included two of the corporation's four directors, who owned 50 percent of the corporation's stock, one of whom was the president. (*Id.*, at pp. 306-307.) The complaint was signed by the secretary-treasurer of Sealand (who also owned 50 percent of the stock) and her husband, who were the other two directors. (*Id.*, at pp. 307, 309.) The court reviewed the decisions which discussed the nature of the president's power to institute litigation and concluded that the issue was undecided. (*Id.*, at p. 322 [noting that New York commentators "appropriately stated, 'The merry-go-round of the corporate president's power to institute legal action in the corporate name still spins; and dizzily!' "].) The court found no such authority in the secretary and affirmed dismissal of the action. The court stated that the proper remedy was through a shareholder's derivative action. (*Id.*, at p. 313.)

In discussing the powers of a corporate president under California law, the *Sealand* court stated that the president has no greater power than any other director.[2] (190 Cal.App.2d at pp. 321-322.) *Streeten* v. *Robinson* (1894) 102 Cal. 542 [36 P. 946], cited by Pearlman, is inapposite, since it did not concern litigation, but whether the corporation could avoid payment on an executed contract where the vice-president hired an attorney. We note from the *Sealand* court's review of the New York cases on the issue that the cases allowing suit involved an emergency, a suit against a stranger to the corporation, or had not been followed by other New York courts. (See also, *Tidy-House Paper Corp. of N.Y.* v. *Adlman, supra,* 168 N.Y.S.2d 448, and *British Brokers, Ltd.* v. *Wolford* (1961) 29 Misc. 997 [219 N.Y.S.2d 827].) After reviewing the issue, we agree with the New York courts that have found no presumptive or implied authority in the president to institute

---

[2]We note the statement in *American Center For Education, Inc.* v. *Cavnar* (1978) 80 Cal.App.3d 476, 498 [145 Cal.Rptr. 736], to the effect that "[i]t is well settled that a corporation may sue upon authorization of its board of directors or upon the initiative of its president or managing officer." *Sealand Inv. Corp.* v. *Emprise, Inc., supra,* 190 Cal.App.2d 305, is cited for this statement, but we feel it clearly does not support the conclusion that the issue is settled, or that the president always has such a power, particularly in the circumstances of the instant case. We express no view on the president's power to institute or defend litigation in an emergency or involving an outsider or where the bylaws may grant the power to do so.

litigation in the name of the corporation against a codirector and equal shareholder. Pressing the corporation into litigation as a plaintiff is inappropriate where the other shareholder-director could claim equal authority to bring suit in the corporate name. This is particularly obvious in the instant case where Bohlken is not only an equal director and shareholder, but is also chief executive officer of the company. The proper vehicle for such a suit, when the gravamen of the complaint is injury to the corporation, is a shareholder's derivative action. (Corp. Code, § 800; *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106 [81 Cal.Rptr. 592, 460 P.2d 464].) There was no error in the order granting summary judgment.[3]

*Errors in Judgment on the Pleadings*

■   Pearlman argues that the court erred when it dismissed the thirteenth and fourteenth causes of action of the second amended complaint. Pearlman, however, waived his right to complain of these errors when he accepted the court's judgment and filed a new complaint. A judgment on the pleadings functions like a demurrer in that it is an attack on the face of the pleading. (*Hayes v. Risk* (1967) 255 Cal.App.2d 613, 623-624 [64 Cal.Rptr. 36]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 263, p. 564.) When a party chooses to amend the complaint after such a motion is sustained, it waives the right to appeal any error therein. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966, fn. 2 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 866 [251 Cal.Rptr. 530].) "[W]hen a party does not leave his pleading where the order sustaining the demurrer has left it, he waives any error on the part of the trial court in sustaining the demurrer. [Citations.] When he amended his complaint . . . he in effect admitted that the demurrer was good and that his complaint was insufficient . . . ." (*Sheehy v. Roman Catholic Archbishop* (1942) 49 Cal.App.2d 537, 540-541 [122 P.2d 60].) Pearlman has waived his right to appeal this issue.

*Errors in Dismissing the Action*

■   Pearlman argues that the court erred in dismissing the action because the July 1, 1991, order denied judgment on the pleadings as to the twelfth

---

[3]The usual remedies available in the case of deadlock in a small corporation include: appointment of a provisional director (Corp. Code, § 308); removal of a dishonest or fraudulent director (Corp. Code, § 304); appointment of a receiver, in limited situations (Code Civ. Proc., § 564, subd. (b)(5)); and involuntary dissolution of the corporation (Corp. Code, § 1800). The cause of action requesting a receiver in Pearlman's second amended complaint was inappropriate in this case because it was sought solely as a remedy for the improperly asserted corporate causes of action.

cause of action. He urges us to find that the twelfth cause of action remained alive for disposition and was improperly dismissed.[4]

Apparently recognizing the fact that Bohlken erroneously represented that all remaining causes of action were subject to the judgment on the pleadings, the court allowed Pearlman to argue his point regarding the twelfth cause of action at the postdismissal hearing on attorney fees.[5] The court correctly determined that the twelfth cause of action did not survive Pearlman's filing of the third amended complaint.

An amended complaint "supersedes the original and furnishes the sole basis for the cause of action. [Citations.] The original complaint is dropped out of the case and ceases to have any effect as a pleading, or as a basis for a judgment. [Citation.]" (*Hayes* v. *Risk, supra,* 255 Cal.App.2d 613, 623; *Sheehy* v. *Roman Catholic Archbishop, supra,* 49 Cal.App.2d at pp. 540-541.)

The judgment on the pleadings only required Pearlman to amend the thirteenth and fourteenth causes of action. Rather than follow this instruction, he filed a new amended complaint containing additional matter. He was told again to follow the court's order when the third amended complaint was stricken, but failed to take any action. By choosing to amend his complaint, Pearlman put an end to the provisions of the previous complaint. We know of no method by which life is breathed into the old complaint merely because the new one contains defects that cause it to be stricken. It was Pearlman, not the court, who erred by failing to file a new pleading.

*Attorney Fees*

Without citation to the record or to any legal authority, Pearlman argues that the court failed to examine the records and determine whether Bohlken's attorney fees had been incurred solely on the contract cause of action. Pearlman's action clearly involved a contract. The ninth cause of action was for breach of that contract, which was a shareholders' agreement. The agreement, attached to every complaint filed by Pearlman, provided for attorney fees to the prevailing party, "[i]n the event suit is brought to enforce or interpret any part" of the agreement. The same contract was alleged to be the basis of the twelfth and thirteenth causes of action. Pearlman's complaints requested attorney fees for both the corporation's causes of actions and the individual causes of action.

---

[4]Contrary to Pearlman's protestations, there was nothing improper about the ex parte nature of the dismissal. (Code Civ. Proc., § 581, subd. (f )(4).)

[5]Pearlman's argument regarding judgments obtained by fraud is inapplicable here. Although Bohlken erroneously stated that the judgment on the pleadings extended to the twelfth cause of action in the second amended complaint, that complaint had been entirely superseded by the third amended complaint. Thus, the erroneous statement had no relation to the outcome of the case.

■ "As long as an action 'involves' a contract, and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit, the other party should also be entitled to attorney fees if it prevails, even if it does so by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract." (*North Associates* v. *Bell* (1986) 184 Cal.App.3d 860, 865 [229 Cal.Rptr. 305].)

■ Bohlken's request for fees listed the areas of work in which fees were incurred. Pearlman failed to specify to the court which areas he alleged did not involve the contract. Aside from a one-paragraph argument, unsupported by factual reference or legal authority, Pearlman failed to bring this claim to the trial court's attention. We find no cognizable error in the award of attorney fees.

### CONCLUSION

We find that the action was properly dismissed. The judgment and order awarding attorney fees are affirmed.

Strankman, P. J., and Stein, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 13, 1993.